**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI ST. JOSEPH DIVISION**

| | | |
|---|---|---|
| MICHAEL RAUCH,<br><br>Plaintiff,<br><br>v.<br><br>CENTURION MEDICAL CARE PROVIDER, et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) | Case No. 23-cv-06150-SRB |

**ORDER**

Before the Court is Defendants Warden Christopher Brewer ("Brewer"), Assistant Warden Shawn Pettigrew ("Pettigrew"), Deputy Warden Marla Felton ("Felton"), and Deputy Warden Joseph "Paul" Drake's ("Drake") (collectively "MDOC Defendants") Motion for Summary Judgment. (Doc. #157.) For the reasons stated below, the motion is DENIED.

## I. FACTUAL BACKGROUND[1]

Plaintiff Michael Rauch ("Plaintiff") is an inmate at Crossroads Correctional Center ("Crossroads"). The Missouri Department of Corrections ("MDOC") contracts with Defendant Centurion Medical Care Provider[2] ("Centurion") to provide healthcare to inmates. Centurion maintains Medication Administration Records ("MARs") that show whether an inmate received his "keep on person" ("KOP") medications. KOP medications allow for self-administration rather than receiving them daily from the medical unit. Plaintiff suffers from various diagnoses,

[1] The following facts are taken from the parties' briefs and the record, and are either uncontroverted or deemed uncontroverted by the Court. Additional facts relevant to the pending motions are discussed in Section III. All page numbers refer to the pagination automatically generated by ECF.

[2] Centurion is not a party to this pending motion.

including Type 2 Diabetes. He is prescribed metformin, which is supposed to be taken daily to manage his diabetes.

At Crossroads, when a medical issue arises, inmates may file an Informal Resolution Request ("IRR"). Inmates direct their IRRs to a warden, but an inmate's case manager refers the complaints to medical staff for review. The medical staff reviews the IRR, makes a recommendation, and sends it back to a warden for review. An assistant warden reviews the response to ensure it is reasonable. If an inmate is not satisfied with the IRR response, he may pursue a "Grievance." (Doc. #158-3, p. 24.) At the grievance level, the Health Services Administrator ("HSA") reviews the complaint, drafts a response, and a grievance officer then submits the response to the warden for review. Again, the warden reviews the response to ensure "it is reasonable." (Doc. #158-3, p. 25.) If the inmate is still unsatisfied with the response, he may file a "Grievance Appeal." (Doc. #158-3, p. 25.)

On July 17, 2022, Plaintiff filed an IRR complaining he did not receive his monthly KOP supply of prescription medications, including metformin. Plaintiff received a response on August 24, 2022, stating that "medical administration is aware there have been delays in patients receiving their medications in a timely manner. The HSA is working on staffing issues that will improve processes with medications." (Doc. #105-10, p. 7.) That response was signed by a Registered Nurse. On the "Staff Use Only" section of Plaintiff's July 17, 2022, IRR, Pettigrew signed and dated his name under the "reviewer signature[.]" (Doc. #105-10, p. 6.)

A month later, on September 19, 2022, Plaintiff filed a "Grievance" complaining that he was not receiving his prescription medications in a timely manner. He received a response two days later signed by both a physician and the HSA stating that "[a]ll medications have been ordered and delivered. While there was an issue receiving medications a few months back, all

offenders were informed they could report to the med line window and receive a dose from clinic stock." (Doc. #105-10, p. 5.) Plaintiff then filed a Grievance Appeal stating that even when he went to the med line window, he was told there were no medications to give him. He received a response in January 2023 from the "Associate Statewide Medical Director" stating that his record "does not reflect any current . . . medication concerns." (Doc. #105-10, p. 3.) Plaintiff submitted at least one additional Grievance Appeal in 2023 complaining about not receiving medications. The responses again provide that his medications have been delivered.

Despite the above chain of grievances and responses stating that Plaintiff's concerns had been addressed and that he had received his prescribed medications, the Court previously found it undisputed that Plaintiff failed to receive the following medications:

**Undisputed Monthly MAR Omissions**

| | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|
| **Metformin** | | December | January | |
| **Naproxen** | | May 7-22 | | |
| **Olmesartan** | | November | May | |
| **Dorzolamide** | | October, November, December | | |
| **Latanoprost** | | May for "a few days," October, November, December | February, April | January |
| **Brimonidine** | | January | | January |
| **Cetirizine** | November | March, June, | January, April, July | March for "a few days" |
| **aspirin** | | July, November | | |

Doc. 103, pp. 6, 8, 10-11; Doc. 103-2, pp. 1-7, 15-45; Doc. 115-4, pp. 1-9; Doc. 115-13, pp. 62-85.

(Doc. #120, p. 4)

In addition to the above, Plaintiff testified that he did not receive his Metformin in February, March, April, May, June, July, and August 2023, and that his prescription for

Naproxen to treat his chronic pain expired in November 2022 and was not renewed until April 2023. During the timeframe of failing to receive medications, it is undisputed that Plaintiff's A1C levels rose. An A1C test measures a patient's average blood sugar level over the past two to three months. However, Plaintiff and MDOC Defendants offer competing expert testimony on the reason behind the rise. Plaintiff contends it is due to not receiving his medication while MDOC Defendants contend the rise is due to Plaintiff's poor diet and lack of exercise. Plaintiff also suffers from glaucoma, and it is further undisputed that the test to measure whether his glaucoma medication is working showed an elevated intraocular pressure ("IOP") in July 2023.

Amidst the timeframe of Plaintiff's complaints, MDOC held two Executive Offender Counsel Meetings that MDOC Defendants and Centurion representatives attended. These meetings allow inmates to ask questions and raise issues to staff. Plaintiff did not attend these meetings. However, evidence shows that other inmates raised medication disbursal concerns when MDOC and Centurion staff stated the actions taken by Centurion to fix the staffing and medication disbursal issues. For example, an issue was raised during the April 27, 2023, meeting that "KOP's are still not being delivered in a timely manner" and staff responded that "[w]e understand there is an issue and [are] working on a plan of correction" including adding a nurse position back and "actively hiring." (Doc. #105-12, p. 10.) The Court notes that April 27, 2023, is approximately ten months after Plaintiff submitted his initial IRR complaint about not receiving his medications. April 27, 2023, is also approximately three months after Plaintiff received a response from his grievance appeal that his records do not reflect any medication concerns.

On November 2, 2023, Plaintiff filed his Complaint alleging a claim of deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment against various Defendants, including MDOC Defendants, who are all wardens at Crossroads.

On June 26, 2026, the MDOC Defendants filed this pending summary judgment motion[3] arguing that they are entitled to qualified immunity. Plaintiff opposes. The parties' arguments are addressed below.

## II. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotation marks omitted).

[3] The Court notes that Plaintiff originally proceeded *pro se* in this case. MDOC Defendants filed an initial motion for summary judgment on January 3, 2025, which the Court denied on March 19, 2025. The Court subsequently appointed Plaintiff counsel (Doc. #124), and the Court entered a new scheduling order (Doc. #135), which allowed additional time for discovery. However, the Court also adopts its rulings from its prior summary judgment order herein. *See* (Doc. #120.)

## III. DISCUSSION

To succeed on a 42 U.S.C. § 1983 claim, "a plaintiff must show [1] that he was deprived of a right secured by the Constitution and the laws of the United States and [2] that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013). The "first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). This is because § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Id*.

MDOC Defendants argue they are entitled to qualified immunity. The qualified immunity inquiry involves two questions: (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *McDaniel v. Neal*, 44 F.4th 1085, 1089 (8th Cir. 2022) (internal citation and quotation omitted). MDOC Defendants are entitled to qualified immunity unless the answer to both questions is yes. *Id*.

### *A. Violation of the Eighth Amendment*

The Court turns to the first half of the qualified immunity analysis—whether the facts show the violation of a constitutional right. "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019) (internal citation omitted). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995); *see also Phillips v. Jasper Cnty. Jail*, 437 F.3d 791,

796 (8th Cir. 2006) ("[T]he knowing failure to administer prescribed medicine can itself constitute deliberate indifference.").

"Deliberate indifference has both an objective and a subjective component." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (quotations omitted). As such, to prove a § 1983 medical indifference claim, a plaintiff must show that that he "[1] had an objectively serious medical need that [2] the defendants knew of and yet deliberately disregarded." *Vogt v. MEnD Corr. Care Inc.*, 113 F.4th 793, 796 (8th Cir. 2024) (citation and quotation marks omitted).

"A medical need is objectively serious if it has been diagnosed by a physician as requiring treatment or if it is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* The knowledge requirement means that "a defendant actually knew of, but deliberately disregarded, a serious medical need[.]" *Id.* "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the detainee." *Id.* at 797 (citation and quotation marks omitted) (cleaned up).

**1. Objectively Serious Medical Need**

It is undisputed that Plaintiff suffered from diabetes, among other diagnoses, and that he was prescribed medication for those conditions. However, MDOC Defendants argue that Plaintiff did not suffer "any serious medical detriment from a delay" in receiving his medications. (Doc. #158, p. 16.) Plaintiff argues that he is not alleging a "delay" in providing treatment, but that MDOC Defendants "withheld" or denied him his prescribed medications. (Doc. #161, p. 43); *see also* (Doc. #1, p. 10) (Plaintiff alleging in Complaint that "Defendants actually knew that [Plaintiff] was *denied* his Life Sustaining Medications and disregarded his serious medical needs and failed to address, investigate, correct the *denial* of [Plaintiff's]

medication.") (emphasis added). As Plaintiff's claim is not based off a delay but a withholding of his medication, he need not provide evidence of an "adverse effect on his prognosis." *Presson v. Reed*, No. 6:19-CV-03192-RK, 2022 WL 107105, at *6 (W.D. Mo. Jan. 11, 2022), aff'd, 65 F.4th 357 (8th Cir. 2023) (quoting *Crowley v. Hedgepath*, 109 F.3d 500, 502 (8th Cir. 1997)); *See also Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999) (inmate complaining about serious physical conditions from failure to treat diabetes did not need to submit verifying medical evidence to establish detrimental effects of alleged delay in treatment, because conditions inmate described would have been obvious to layperson).

Further, even if Plaintiff were required to provide verifying medical evidence because his complaints concern a delay and not a withholding of medications, he argues that his "need for his medications would have been obvious to a layperson[.]" (Doc. #161, p. 44.) There is no dispute that Plaintiff's A1c levels rose during the relevant period. And as stated above, Plaintiff and MDOC Defendants offer competing expert testimony on the reason behind the rise. *See Dantzler v. Baldwin*, 133 F.4th 833, 844 (8th Cir. 2025) ("Clearly, expert testimony that the plaintiff suffered because of a delay in treatment would satisfy the requirement[]" of providing verifying medical evidence) (internal quotes omitted). This competing expert testimony, coupled with Plaintiff's complaints that he went weeks or months without his medications, and his medical records documenting the increase in his A1c levels, creates a genuine issue of material fact on whether Plaintiff had a serious medical need.[4]

---

[4] Plaintiff also correctly notes that "[a]lthough the MDOC Defendants focus solely on the lack of diabetes medication, the elevated A1c levels are not the only complications caused by the missing prescriptions. For example, in July 2023, Plaintiff's IOP was 22/23 in both eyes which is above the normal IOP range (PSOF 32, 33, 34, and 35). The increase in Plaintiff's IOP was due to Plaintiff not receiving his medications, which caused injury to his eyes (PSOF 36)." (Doc. #161, p. 44.) This evidence further supports that there is a genuine issue of material fact on whether Plaintiff's need for medications would be obvious to a layperson.

The Court now turns to examining whether there is a genuine issue of material fact on whether MDOC Defendants knew of and deliberately disregarded Plaintiff's serious medical need.

**2. Subjective Element of Deliberate Indifference**

MDOC Defendants argue that "Plaintiff cannot establish the subjective element of his deliberate indifference claim" because "MDOC Defendants did not have knowledge of Plaintiff's alleged serious medical needs, but understood, *based on representations made by Centurion Representatives*, that inmates, including Plaintiff, were receiving daily doses of medications in light of the 30-day blister pack shortage and staffing issues." (Doc. #158, pp. 8, 9) (emphasis added.)

First, the Court rejects MDOC Defendants' contention that their "just[ifiable]" reliance on Centurion relieves MDOC Defendants of liability. (Doc. #158, p. 9.) "Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir.1989). As such, "where the duty to furnish treatment is unfulfilled, the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (citing *West v. Atkins*, 487 U.S. 42, 55 (1988)). "There is no doubt" that MDOC Defendants had a "constitutional duty to see that" Plaintiff, an inmate under their charge, received medical care. *Id*. If MDOC Defendants "knew that [Plaintiff's] serious medical needs were not being adequately treated yet remained indifferent, [they] may be held personally liable." *Id*.

Next, MDOC Defendants argue they lacked "actual knowledge"[5] that Plaintiff's serious medical needs were not being met. (Doc. #158, p. 9.) Plaintiff, however, argues that "MDOC Defendants knew Plaintiff and other inmates were not receiving their medication on a daily basis as early as July/August 2022." (Doc. #161, p. 38.) The Court finds there is a genuine issue of material fact on whether MDOC Defendants knew Plaintiff was not receiving his medication and deliberately disregarded that information.

For example, it is undisputed that MDOC Defendants attended two Executive Offender Council meetings in 2023 at which inmates raised concerns about receiving their prescribed medications in a timely manner. Further, in January 2023, Plaintiff sent a letter on behalf of Crossroads' "inmates" complaining that they were becoming getting sick from not receiving their medication. Although Plaintiff did not personally sign the letter, it provides further evidence of MDOC Defendants' subjective knowledge of a medication dispensation issue at Crossroads.

Defendants contend that they "became aware" of the pharmacy prescription issues during the Executive Offender Council Meetings. But there is evidence that MDOC Defendants review the medical staff's responses to inmates' IRRs and Grievances, including Plaintiff's, who submitted complaints well before those meetings. (Doc. #158, p. 10.) MDOC Defendants contend that they do not "substantively" review the responses provided by medical staff. Yet there is evidence that at least Pettigrew signed Plaintiff's July 2022 IRR and that institutional policy required MDOC Defendants to review IRR and Grievance responses before they are returned to inmates.[6] (Doc. #158, p. 11.) Whether MDOC Defendants reviewed those responses

[5] The Court notes that MDOC Defendants collectively argue that they did not have actual knowledge of Plaintiff's serious medical needs. The MDOC Defendants do not challenge the specific knowledge of each MDOC Defendant.
[6] MDOC Defendants rely on *Keeper v. King*, 130 F.3d 1309, 1313 (8th Cir. 1997) for the premise that MDOC Defendants cannot be liable for "general responsibility" of operating a prison; however, in that case, the Eighth Circuit

and, if so, whether their review is sufficient to make them subjectively aware of Plaintiff's serious medical needs presents a credibility determination best left to the jury. *See Arnett v. Norris*, 160 F.4th 921, 926 (8th Cir. 2025) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge") (internal citation omitted).

Further, the Court previously found in the prior summary judgment Order that

> the parties largely disagree on multiple remaining relevant issues, including, but not limited to, what specific months Plaintiff was not provided his KOP medications through the standard procedure, why Plaintiff did not receive his KOP medications through the standard procedure for each relevant month, whether there existed an alternative procedure for Plaintiff to obtain his KOP medications, whether MDOC Defendants had sufficient subjective knowledge of Plaintiff's serious medical needs, or whether Plaintiff was injured[.]

(Doc. #120, p. 11.)

The evidence presented still shows that these same issues remain in dispute. As such, construing the evidence in the light most favorable to Plaintiff, the evidence raises inferences upon which a reasonable jury may find that MDOC Defendants were each aware that there was an ongoing systemic issue at Crossroads causing the inmates to be denied their prescribed medications and that Plaintiff was one such prisoner, but they either tacitly authorized the violative practices or otherwise failed to take corrective action despite having the authority to do so. Such a claim raises a cognizable theory under which MDOC Defendants may be held liable under § 1983. *See Langford*, 614 F.3d at 464 ("Supervisors can, however, incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction

---

noted that the warden "never received a grievance of letter concerning [plaintiff's] care." *Id*. Whereas, here, there is no dispute that internal processes require that MDOC Defendants review the IRRs and grievances that Plaintiff submitted. As such, the Court finds *Keeper* distinguishable.

amounts to deliberate indifference to or tacit authorization of the violative practices." (internal quotation omitted, alteration in original)).

***B. Clearly Established Right***

The Courts next addresses the second inquiry under the qualified immunity analysis—whether the right was clearly established at the time of the deprivation. "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (internal citation and quotation omitted). "[T]he law at the time of the events in question must have given the officers 'fair warning' that their conduct was unconstitutional." *Id*. (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Plaintiff's claim is brought under the Eighth Amendment of the United States Constitution. "It is well established that deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Langford*, 614 F.3d at 459. Eighth Circuit precedent gave MDOC Defendants "fair warning" that failing to provide Plaintiff with his prescribed medication violated his constitutional rights. *See Dadd v. Anoka Cnty.*, 827 F.3d 749, 757 (8th Cir. 2016) ("When an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow."); *see also Langford*, 614 F.3d at 462 ("a reasonable official . . . would have understood that ignoring [plaintiffs'] complaints about receiving deficient medical care contravened clearly established principles of Eighth Amendment jurisprudence"); *see also Turner v. Otwell*, No. 4:23cv-04050-SOH-BAB, 2024 WL 3545958, at *11 (W.D. Ark. June 7, 2024) (finding that "[i]t was clearly established by no later than 1999 that to deny a diabetic treatment and then ignore his complaints about the treatment he received violated an inmate's right to adequate medical care").

For these reasons, and the additional reasons stated by Plaintiff, the Court finds that MDOC Defendants are not entitled to qualified immunity.

## IV. CONCLUSION

Accordingly, MDOC Defendants' Motion for Summary Judgment (Doc. #157) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: August 17, 2026